**2:14-cv-3184 Sec P**

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 0 5 2014

TONY R. MOORE, CLERK
BY _____
DEPUTY

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| RANDALL JOSEPH GATHE | * | CRIMINAL NO. 09-00221 |
| | * | |
| VERSUS | * | JUDGE DOHERTY |
| | * | |
| C. MAIORANA, Warden | * | MAGISTRATE JUDGE METHVIN |

## PETITION FOR A WRIT OF WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Petitioner, RANDALL JOSEPH GATHE, ("Gathe"), appearing *pro se*, and in support of his Motion would show as follows:

## I. JURISDICTION

Jurisdiction is vested in the Court pursuant to 28 U.S.C. § 2241 which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. See *Gallegos–Hernandez v. United States*, 688 F.3d 190 (5th. Cir. 2012).

## II. <u>STATEMENT OF THE GROUNDS FOR REVIEW</u>

A. Whether a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence would be inadequate or ineffective to challenge Petitioner's conviction and sentence.

B. Whether pretrial counsel's acts and omissions were ineffective under the Sixth Amendment to the Constitution of the United States where he failed to: (1) Properly inform Gathe of the circumstances and likely consequences of pleading guilty as opposed to proceeding to trial including informing him of the maximum sentence if he was convicted at trial; and (2) Attempt to negotiate a favorable Plea Agreement.

C. Whether sentencing counsel was ineffective under the Sixth Amendment to the Constitution of the United States when he failed to: (1) Discuss and explain the Presentence Report ("PSR") with Gathe prior to the sentencing hearing; and (2) File substantive objections to the PSR.

D. Whether trial counsel's failure to consult with movant about filing a Notice of Appeal, deprived him of effective assistance of counsel and a fair and meaningful appellate review.

### III. RELEVANT PROCEDURAL BACKGROUND

#### A.    Procedural Background

On September 16, 2009, a federal grand jury sitting in the Western District of Louisiana, Lafayette Division, returned a seven count Indictment charging Gathe and two co-defendants. Count 1 alleged a Conspiracy to Possess with Intnet to Distribute cocaine, cocaine base and other controlled substances, in violation of 21 U.S.C. § 846. See Doc. 1.[1] Counts 2, 3 & 6 alleged Possession with Intent to Distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 4 alleged Possession of Firearm in Futherance of a Drug Trafficking crime, in violation of U.S.C. § 924 (c)(1). *Id.* Count 5 alleged   Possession of Firearm by a Person convicted of a Domestic violence misdemeanor, in violation of U.S.C. § 922 (g)(9). *Id.* Count 7 was a Forfeiture allegation, in violation of 18 U.S.C. § 924 (d)(1). *Id.*

On January 27, 2010, Gathe pleaded guilty to Counts 1 and 4 of the Indictment pursuant to a written Plea Agreement. See Doc. 105.

On July 1, 2010, Gathe was initiatlly sentenced to 151 months as to Count 1 and 60 months as to Count 4, to run consecutive. His total sentence was 211 months

---

[1] "Doc." refers to the Docket Report in the U. S. District Court for the Western District of Louisiana, Lafayette-Opelousas Division, in Criminal Number 6:09-cr-00221-EEF-PJH-3, which is immediately followed by the Docket Entry Number.

imprisonment. He was also sentenced to 5-years of Supervised Release, no fine or restitution, and a $200 Mandatory Special Assesment Fee. See Doc. 97.

Gathe's attorney, Peter Questaverd John ("John"), did not file a Notice of Appeal.

On February 8, 2013, the Court reduced Gathe's total sentence from 211 to 181 months imprisonment pursuant to his Motion pursuant to 18 U.S.C. § 3582(c)(2) and the retroactive USSG Guideline Amendment 750. See Doc. 128.

### B.   <u>Statement of Relevant Facts</u>

#### 1.   <u>Offense Conduct</u>

Gathe stipulated to the following facts regarding his offense conduct. See Doc. 76, Exhibit 2.

This case was part of an Organized Crime Drug Enforcement Task Force (OCDETF) investigation know as Operation SportZone conducted by the Drug Enforcement Administration ("DEA") and Lafayette Metro Narcotics ("LMN"). The primary target of this investigation was Joseph Lee Helaire, Jr., ("Helaire") the leader of a cocaine, "crack" and marijuana distribution organization.

Gathe admitted that during the period alleged in the Superseding Indictment he was obtaining controlled substances from Melvin Wayne Alexander, ("Alexander"), who in turn obtained from various sources including, on occasion Helaire. Alexander

was also an alternate source of cocaine for the Helaire drug trafficking organization. Gathe also admitted that the government's evidence would establish that Alexander and his associates possessed with intent to distribute more than five (5) kilograms of cocaine, and that some of it was converted into more than fifty (50) grams of cocaine base prior to distribution. He further admitted that the controlled substances that he obtained from Alexander were intended by him for distribution to others.

On January 28, 2009, a state search warrant was issued by the 15th Judicial District Court, authorizing a search of the Gathe's residence by agents of the Lafayette Metro Narcotics Unit. During the execution of the search warrant the agents found and seized a loaded Glock model 21, .45 caliber semi-automatic pistol. They also seized a purple Crown Royal bag, containing a Lortab pill, 35 grams of cocaine base, and 8 grams of marijuana in the living room. In a gym bag in the sole bedroom was seized a digital scale, 310 grams of cocaine, and 3708 grams of marijuana. Also seized from this bedroom was a plastic container, in which was found $29,000 in U. S. currency. *Id.*

After *Miranda* advisement, Gathe admitted that the drugs, digital scale, and currency were his. Gathe also admitted having received 2 kilograms of cocaine from Alexander six months earlier, which Gathe explained he was "nickel and dimeing it" (selling small street quantities of crack). *Id.*

5

The seized substances were transported to and analyzed by the Acadiana Criminalistics Laboratory in New Iberia. The analysis found there to be 33.5 net grams of cocaine base, 301 net grams of cocaine, and 7 net grams of marijuana. *Id.*

Gathe allegedly admited that the currency seized was drug proceeds and that he possessed the firearm to protect himself, his controlled substances, and his drug proceeds. *Id.*

### 2.    Plea Proceedings

On January 27, 2010, Gathe pleaded guilty to Counts 1 and 4 of the Indictment pursuant to a written Plea Agreement. See Doc. 105. In exchange for his guilty plea, the government agreed to dismiss the remaining Counts pending against him and to move for an additional one offense level reduction for acceptance of responsibility. *Id.* at 2. It is essential to note that there was not any provision stating that Gathe waived his right to appeal. Prior to Sentencing, John failed to file any objections to the Presentence Report ("PSR") or a Memorandum of Law in Mitigation of Gathe's sentence.

### 3.    Sentencing Proceeding

On July 1, 2010, Gathe was initiatlly sentenced to 151 months as to Count 1 and 60 months as to Count 4, to run consecutive. His total sentence was 211 months imprisonment. He was also sentenced to 5-years of Supervised Release, no fine or

restitution and a $200 Mandatory Special Assesment Fee. See Doc. 97. The remaining pending Counts in the Indictment were dismissed upon motion by the government. *Id.*

On February 8, 2013, Gathe's sentence was reduced to a total of 181 months imprisonment  pursuant to USSG Amendment 706. See Doc. 128.

Even though Gathe desired to appeal his conviction or sentence, his attorney failed to file a notice of appeal.

Gathe also has not filed a previous Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

# IV. DISCUSSION

As a preliminary matter, it is respectfully requested that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. *Sama v. Hannigan*, 669 F.3d 585 (5th Cir. 2012)*; Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## A.   A Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence would be inadequate or ineffective to challenge Petitioner's conviction and sentence.

The question presented here is whether petitioner is entitled to challenge the sentencing error by way of a petition for a writ of habeas corpus under 28 U.S.C. 2241. Section 2255(e) provides that a defendant may file a petition for a writ of habeas corpus under Section 2241 if Section 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. 2255(e)(Supp. V 2011).

The Supreme Court of the United States has not addressed the circumstances under which a Section 2255 motion is "inadequate or ineffective to test the legality of [a prisoner's] detention," making resort to Section 2241 appropriate. The courts of appeals, however, have generally agreed upon a number of governing principles. They recognize that Section 2255 is not "inadequate or ineffective" simply because relief has been denied under that provision, because "[a] contrary rule would effectively nullify the gatekeeping provisions" restricting second or successive

applications for collateral relief. See *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). But they have concluded that Section 2255 may be inadequate or ineffective in limited circumstances, including those involving certain fundamental statutory-interpretation errors. Specifically, Gathe must demonstrate that three circumstances are present to establish that Section 2255 is inadequate or effective in a particular case. See *Reyes-Requena v. United States*, 243 F.3d 893, 903-904 (5th Cir. 2001). First, he must show that he lacked a prior opportunity to obtain relief based on the decision on which he now relies because his claim was foreclosed by circuit or Supreme Court precedent at the time of his sentencing, direct appeal, and initial collateral attack under Section 2255. *Id.* That requirement is satisfied here because Gathe's decision to plead guilty was based on deficient advice of his attorney, and his sentence is erroneous under *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), a claim that was foreclosed by Fifth Circuit precedent at the time Gathe was sentenced. He was also foreclosed from filing a direct appeal because his attorney failed to file a Notice of Appeal on Gathe's behalf as he had requested he do. Second, Gathe must show that he would not be able to bring his claim in a second or successive motion under Section 2255. *Id.* That requirement is also satisfied here, as Section 2255(h) provides that a second or successive Section 2255 motion may be authorized only when the defendant makes

9

a *prima facie* showing that his petition relies on a new retroactive rule of constitutional law or on new factual evidence of actual innocence. 28 U.S.C. 2255(h) (Supp. V 2011). This is satisfied with the *Lafler* and *Frye* holdings. Third, Gathe must show a fundamental error in the criminal proceedings. The fundamental error in this case is obvious in that Gathe's counsel provided ineffective assistance of counsel because he failed to inform Gathe of the circumstances and likely consequences of pleading guilty as opposed to standing trial. He also failed to inform Gathe of the maximum sentence he faced in this case and he failed to give an accurate estimate of the time of imprisonment Gathe would be facing if convicted at trial as compared to if he pled guilty.

Further, the savings clause's text, which permits resort to Section 2241 when Section 2255 is inadequate or ineffective to challenge the prisoner's "detention," 28 U.S.C. 2255(e) (Supp. V 2011), indicates that savings-clause relief is not limited to collateral attacks on a conviction. While the word "detention" includes challenges to a conviction, it is not limited to such claims, and the term can naturally be understood to encompass challenges to a sentence as well. See Black's Law Dictionary 449 (6th ed. 1990) (defining "detain" to include "keep in custody"); see also *Id.* at 514 (9th ed. 2009) (defining "detention" as "[t]he act or fact of holding a person in custody"). A challenge to a conviction attacks the legal basis for a prisoner's "detention," and a

10

challenge to a sentence attacks the lawful extent of the "detention." In addition, other subsections of Section 2255 expressly impose a conviction-only limitation, which indicates that Congress did not intend the savings clause to be limited to conviction-based claims. For instance, the courts of appeals may authorize the filing of a second-or-successive Section 2255 motion when the prisoner relies on persuasive new evidence showing that the factfinder would not have found him guilty "of the offense." 28 U.S.C. 2255(h)(1) (Supp. V 2011). See, e.g., *In re Hill*, 715 F.3d 284, 297-298 (11th Cir. 2013) (holding that Section 2255(h) does not permit a successive Section 2255 motion based on new evidence relating to the propriety of the prisoner's sentence, and citing cases). It stands to reason that if Congress intended to restrict the savings clause to claims challenging only "the offense" or "the conviction," Congress would have used the words "offense" or "conviction" in the savings clause, as it did in Section 2255(h)(1). As such, the savings clause does permit petitioner to seek relief under Section 2241 where he challenges his sentence rather than his conviction. Sentences that exceed the statutory maximum, or that impose a statutory mandatory minimum based on a legal error, are cognizable under the savings clause.

A sentence imposed above the otherwise-applicable statutory maximum based on a legal error is a fundamental defect redressable under the savings clause. A conviction for non-criminal conduct implicates the separation of powers principle that

"it is only Congress, and not the courts, which can make conduct criminal." *Bousley v. United States*, 523 U.S. 614, 620-621 (1998). Similarly, a sentence above the statutory maximum implicates the separation-of-powers principle that "the power * * * to prescribe the punishments to be imposed upon those found guilty of [federal crimes] resides wholly with the Congress." *Whalen v. United States*, 445 U.S. 684, 689 (1980). Federal courts do not have the authority to impose a sentence without legislative authorization, and a sentence above the statutory maximum represents just such an unauthorized sentence. See, e.g., *Chapman v. United States*, 500 U.S. 453, 465 (1991) (sentencing court may impose any sentence that has been "authorized by statute"). The imposition of an erroneous mandatory minimum sentence is likewise a fundamental error that raises separation-of-powers concerns analogous to those implicated by a sentence above the statutory maximum. Congress has the exclusive authority to establish maximum and minimum penalties for a criminal offense. See *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) ("It is the legislature, not the Court, which is to define a crime, and ordain its punishment."). When courts commit legal error in determining that a defendant is required to be sentenced to a mandatory minimum term, they transgress the authority that Congress established and effectively erroneously sentence the defendant to an aggravated crime.

In addition, the imposition of a mandatory minimum term based on legal error significantly affects a defendant's liberty interests in a way that implicates due process. While mandatory minimum punishments are unquestionably valid legislative means to curb judicial discretion and ensure severe punishment for defendants whose conduct and history warrant those penalties, the imposition of a mandatory minimum term based on legal error wrongly deprives the court of discretion to impose a lower sentence after considering all of the mitigating and aggravating factors surrounding the offense. The resulting sentence therefore represents an unjustified loss of liberty. The fundamental character of that deprivation is confirmed by the Supreme Court's holding in *Hicks v. Oklahoma*, 447 U.S. 343, 346-347 (1980), which held that a similar error under state law violated due process because "[t]he defendant * * * has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State."8 *Id.* at 346 (citation omitted). Accordingly, the erroneous imposition of a mandatory minimum sentence is a fundamental defect that warrants correction under the savings clause when the defendant otherwise had no opportunity to raise it. Here, under pre-*Lafler* and *Frye* holding, the prevailing misunderstanding about how to determine whether ineffective assistance of counsel applied to the plea

stage of the proceedings. Given the foreclosure of petitioner's sentencing argument at the time of sentencing and direct appeal, and the advent of *Lafler* and *Frye*, habeas relief under the savings clause is available.

Accordingly, this Court should grant the petition and vacate the judgment and sentence for further proceedings.

**B.** **Pretrial counsel's acts and omissions were ineffective under the Sixth Amendment to the Constitution of the United States when he failed to: (1) Properly inform Gathe of the consequences of pleading guilty as opposed to proceeding to trial including informing him of the maximum sentence if he was convicted at trial; and (2) Attempt to negotiate a favorable Plea Agreement.**

"[C]riminal justice today is for the most part a system of pleas, not a system of trials. . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking into account the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have become so central to the administration of the criminal justice system . . . ," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court recently recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384; see also, *Frye*, 132 S. Ct. at 1407.

14

In order for Gathe to prevail on his ineffective assistance of counsel claim, he ultimately must demonstrate that his attorney's performance was deficient and that there is a reasonable probability that, but for counsel's deficient performance, he would not have proceeded to a jury trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Hill,* the Court held that *Strickland*'s two-step framework applies to effectuate a claim of ineffective assistance of counsel; see also, *Frye* and *Lafler,* supra; *Premo v. Moore,* 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010)("Before deciding whether to plead guilty, a defendant is entitled to'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

A plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010).  Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. See *United States v. Rivas–Lopez*, 678 F.3d 353 (5th. Cir., 2012). In *Rivas,* the defendant  contended that he received ineffective assistance of counsel when his attorney overestimated his sentencing exposure under a plea deal, leading him to reject the deal and stand trial. The district court rejected the argument. The Fifth Circuit held that, in light of the conflicting accounts by defendant and his

counsel and the incomplete record on other relevant factors, the district court should have held an evidentiary hearing before dismissing defendant's 28 U.S.C. 2255 application. The Court vacated the district court's order with respect to the claim of ineffective assistance during plea negotiations and remanded the case to the district court for further proceedings, to include an evidentiary hearing, consistent with its opinion. The Court noted that it had the benefit of the Supreme Court decisions in *Lafler* and *Frye* that the district court did not have. Further, the Court held that it is now plain that remanding "will allow the district court to develop a complete record, make appropriate fact findings, and grant relief in the first instance if evidence supports [Rivas's] contentions." *Rivas-Lopez*, 678 F.3d at 359.

In *Hill*, the application of *Strickland* in the plea bargaining process, and the requirement for counsel to provide advice "within the range of competence is demanded of attorneys in criminal cases," *McMann v. Richardson,* 397 U.S. 759, 771 (1970), are settled law, and has been previously applied in this circuit. See *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir., 2003) (applying *Hill* and *Strickland* under the AEDPA to hold that counsel must communicate a plea offer so that the petitioner can make an informed decision).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances where lawyers advise their clients at the plea-bargaining stage of the case. *Cf. Lafler,* supra; *Frye,* supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case where a lawyer provides ineffective assistance of counsel when the defendant rejects a plea deal and proceeds to trial in the face of overwhelming evidence of guilt and lacking any viable defense.

The Supreme Court's decisions in *Frye* and *Lafler* provides guidance in how *Hill* applies to differing factual settings; the constitutional standard in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings." In *Lafler*, the Court held where counsel's ineffective advice led to an offer's rejection, and where the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented

to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. It is logical that if an attorney grossly underestimates a defendant's sentence exposure of pleading guilty and advises him to enter into a plea agreement which has absolutely no benefit to his client and the defendant receives the maximum sentence, the attorney's performance has constituted ineffective assistance of counsel.

It is the lawyer's duty to ascertain if the plea is available, that it could possibly lead to a less harsh sentence and entered voluntarily and knowingly. *Id.* He must actually and substantially assist his client in deciding whether to plead guilty. *Id.* It is his job to provide the accused an "understanding of the law in relation to the facts." *Id.* The advice he gives need not be perfect, but it must be reasonably competent. *Id.* His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

Whether a defendant pleads guilty or goes to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. See *Brady v. United States*, 397 U.S. 742 (1970).

18

Since Gathe was first sentenced, the Supreme Court of the United States decided *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'")(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The *Padilla* Court's decision was expressly based on *Strickland*. See *Padilla*, 130 S. Ct. at 1482. First, Gathe must establish that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In this case, Gathe received ineffective assistance of counsel during both the pretrial and the plea-bargaining stages of the proceedings. Because Gathe was a layman as to the law, he wholly relied on John's advice. Gathe's decision to plead guilty was based on John's deficient advice. "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court." *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir.1995). "'By grossly underestimating [Gathe's] sentencing exposure ..., [John]breache[s] his

duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.'" *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir.2003) (citing and quoting *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.1998)). Here, Gathe was denied his constitutional right to effective counsel relative to his decision to stand trial rather than plead guilty. John's performance was deficient because, among other things, he was unfamiliar with the Sentencing Guidelines and substantially misstated Gathe's exposure if he were to be found guilty at trial. John grossly underestimated his potential sentence and did not inform him of the statutory maximum sentence. He failed to advise Gathe of the circumstances and likely consequences of pleading guilty as opposed to proceeding to trial. John estimated that Gathe would receive a sentence of ten (10) years or less imprisonment if he pled guilty, which was inaccurate by sixty-one (61) months. See *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir.2005) (determining that a misstatement of a sentencing range by 27 months would be enough to be deficient performance). John failed to inform Gathe that he would be facing a sentence of fifteen (15) to twenty (20) years imprisonment if he pled guilty. He failed to advise Gathe that Court 4, the firearm charge, would be no less than 60 months imprisonment and would run consecutively to his sentence in Count 1. This  inself was deficient performance which satisfies the first *Strickland* prong. Had Gathe been

properly informed, there is a reasonable probability that he would have proceeded to trial. Without being properly informed by his attorney of the circumstances and likely consequences of his case, Gathe could not make an informed decision of whether to plead guilty or proceed to trial. As such, he could only base his decision to plead guilty on John's inaccurate, erroneous and deficient advice. With the proper advice from John, the result of the proceeding could have been different. Had John informed Gathe of the circumstances and likely consequences of his case as well as an accurate sentencing estimate, there is a reasonable probably that Gathe would have proceeded to trial.   As such, John's representation was deficient and Gathe was actually prejudiced by receiving a significantly more harsh sentence than he was told he would by his attorney. Therefore, John was not effective under *Strickland, Hill, Lafler, Frye* and the Sixth Amendment.

Accordingly, Gathe respectfully requests an evidentiary hearing be held so that he can further prove that he would not have pled guilty and would have proceeded to trial by jury had he been informed of the correct consequences of his case.

**B.**     **Sentencing counsel was ineffective under the Sixth Amendment to the Constitution of the United States when he failed to discuss, explain or file objections to the  Presentence Report ("PSR") for Gathe prior to the Sentencing Hearing.**

In this case, John provided Gathe with a copy of the PSR just prior to the sentencing hearing. He did not review, explain or discuss it with him. He also did not file any objections to the PSR, challenge or argue anything at sentencing. As such, the Court adopted the PSR and initiatlly sentenced Gathe within the advisory Guideline range  recommended. Gathe was sentenced to a total sentence of 211 months imprisonment. Gathe was sentenced on Count 1 to 151 months imprisonment and on Count 4 to 60 months imprisonment, which was run consecutively to Count 1. As previously stated, John failed to inform Gathe that Count 4 would be run consecutive to Count 1.

John's representation of Gathe was, at best, passive. He certainly was not a zealous advocate for Gathe in or out of Court. He failed to put the government's case to any kind of adversarial test. He merely went through the business as usual procedure and was more like a potted plant than an attorney fighting for his client.

Later, upon its own motion, the Court lowered Gathe's sentence to a total sentence of 181 months imprisonment based on USSG Amendment 750.

Based on the above, John's performance was deficient as Gathe's sentencing attorney, he failed to inform, explain, or file any objections to the PSR. Gathe acquiesced to and followed the advice of John. Gathe was prejudiced by his attorney's deficiency when he received a significantly more harsh sentence than he expected per John's advice.

Accordingly, John's sentence should be vacated for resentencing.

### C.   Trial Counsel's Failure to Consult with Movant about Filing a Notice of Appeal Deprived Him of Effective Assistance of Counsel and a Fair and Meaningful Appellate Review.

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriquez v. United States,* 395 U.S. 327 (1969). This is true even when a defendant has waived his right to a direct appeal and collateral review, such as through a waiver clause in a plea agreement. See *Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

The Sixth Amendment guarantees "reasonably effective" legal assistance. See *Strickland,* 466 U.S. at 687-88. To show ineffective assistance, the two-prong *Strickland* test requires a defendant to show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) such deficient performance prejudiced the defendant. See *Roe v. Flores–Ortega,* 528 U.S. at 476–77. In

*Flores–Ortega*, the Supreme Court elucidated how the *Strickland* test applies in the context of counsel's failure to file a notice of appeal "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other." *Id.* at 477.

Under *Flores–Ortega*, the first *Strickland* prong begins with the question whether counsel "consulted" with the defendant regarding an appeal. *Id.* at 478. "Consulting" is a term of art that means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." See *United States v. Van Pham*, 722 F.3d 320 (5th. Cir. 2013) (quoting *Flores–Ortega*, 528 U.S. at 478)).

If, however, counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The existence of a duty to consult is

24

assessed in light of "all the information counsel knew or should have known." *Id.* Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. *Id.* The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases." *Id.* at 481.

Finally, under *Flores–Ortega*, a defendant satisfies the second *Strickland* prong if he shows "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. The defendant does not have to show that "his hypothetical appeal might have had merit." *Id.* at 486. This second-prong prejudice test "applies even where a defendant has waived his right to direct appeal and collateral review." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir.2007).

In this case, Gathe pled guilty pursuant to a written Plea Agreement upon counsel's advice. He did not waive his right to appeal his conviction or sentence in his Plea Agreement. He was informed of his right to appeal by the Court at sentencing. Gathe wanted to appeal his sentence, and instructed his counsel to file a notice of appeal but his attorney told him that he could not because if he did the government could per the written Plea Agreement reinstate the entire Indictment with all of the Counts. Gathe still wanted to appeal his sentence, but John did not file a

Notice of Appeal. As such, in light of *Flores–Ortega*, John's representation was deficient and Gathe was prejudice because he did not get to file an appeal, and therefore, he did not have a fair and meaningful appeallate review.

Accordingly, Gathe should be granted leave to file an out-of-time appeal.

## VI. CONCLUSION

For the above and foregoing reasons, there is a reasonable probability that the outcome of this case would have been different had Gathe's counsel provided effective assistance of counsel by giving proper advice and raising and properly arguing the above meritorious grounds. Accordingly, Gathe's sentence should be vacated for resentencing. In the alternative, Gathe respectfully requests that the Court grant leave to file an out-of-time direct appeal. In a final alternative, an evidentiary hearing should be held so that Gathe may further prove his grounds, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

_____

Randall Joseph Gathe
Reg. No. 14484-035
FCI Oakdale I
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463
Appearing *Pro Se*

26

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2014, a true and correct copy of the above and foregoing Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, was sent via U. S. Mail, postage prepaid to Brett L. Grayson, Assistant U. S. Attorney at United States Attorney's Office, 104 Keeneland Lane, Lafayette, LA 70503.


_____
Randall Joseph Gathe

Notice of Appeal. As such, in light of *Flores–Ortega*, John's representation was deficient and Gathe was prejudice because he did not get to file an appeal, and therefore, he did not have a fair and meaningful appeallate review.

Accordingly, Gathe should be granted leave to file an out-of-time appeal.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, there is a reasonable probability that the outcome of this case would have been different had Gathe's counsel provided effective assistance of counsel by giving proper advice and raising and properly arguing the above meritorious grounds. Accordingly, Gathe's sentence should be vacated for resentencing. In the alternative, Gathe respectfully requests that the Court grant leave to file an out-of-time direct appeal. In a final alternative, an evidentiary hearing should be held so that Gathe may further prove his grounds, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

*Randall Gathe*

Randall Joseph Gathe
Reg. No. 14484-035
FCI Oakdale I
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463
Appearing *Pro Se*